UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 09-CR-10253

UNITED STATES

v.

STEVEN SOTO,
PEDRO SOTO,
CARMEN SOTO, and
KIMBERLY LITWIN

MATERIAL FACTS, RULINGS OF LAW, AND ORDER
ON DEFENDANTS' OMNIBUS MOTION TO SUPPRESS

April 26, 2011

STEARNS, D.J.

Defendants Steven Soto, Pedro Soto, Carmen Soto, and Kimberly Litwin move to suppress evidence[1] seized in May of 2007 pursuant to search warrants executed at residences located at 56 Lawrence Road and 14 Moulton Street in Lynn, Massachusetts, as well as the contents of the hard drive of a Gateway laptop computer seized in February of 2007. Defendants further seek to suppress recordings of monitored telephone calls made by Steven Soto in 2007 from the Essex House of

---

[1] Defendants had also moved to suppress the fruits of searches conducted in 2006 of the Soto home at 56 Lawrence Road and a desktop computer seized from the home. The government, however, has since undertaken to offer in its case-in-chief only the evidence seized pursuant to the three warrants issued in 2007.

Correction. Finally, they request a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), alleging that the affidavit supporting the 2007 residential search warrants contains intentionally false or recklessly untrue statements that are material to a finding of probable cause. A hearing on the motion was held on October 22, 2010. At the court's request, the parties filed supplemental briefing, which was completed at the end of December of 2010.

## BACKGROUND

During the afternoon of April 28, 2006, a federal-state task force descended on 56 Lawrence Road in Lynn, Massachusetts, to execute arrest warrants for Steven Soto and his brother, Pedro Soto, Jr.[2] The Soto brothers had listed 56 Lawrence Road as their mailing address in various Registry of Motor Vehicles (RMV) documents, including vehicle registrations and drivers' licenses.[3] Steven Soto did not live at 56 Lawrence Road, although he often spent the night visiting his brother and his father and mother, Pedro, Sr. and Carmen Soto. A neighbor told the officers when they arrived that Steven Soto's car was frequently parked at 56 Lawrence Road and had been seen there as recently as the previous day.

---

[2] The Pedro Soto named in the indictment is the brothers' father, Pedro, Sr.

[3] The government asserts that a Lynn Police report dated April 12, 2006, and several insurance claim forms also list 56 Lawrence Road as Steven Soto's residence. However, Steven Soto points to an RMV record dated May 2, 2006, in which he declared his domicile as 242 Main Street in Springfield, Massachusetts.

Several officers went to the front door of 56 Lawrence Road while others took up defensive positions around the house. Detective Michael Murphy entered the side yard through a gate in the fence. Peering through a window of the attached garage with the aid of a flashlight, Murphy was able to make out a motorcycle with a Massachusetts registration number SZ6659. Officers later learned that a motorcycle bearing that registration number had been reported stolen by its owner earlier in the month.

Finding no one at home at 56 Lawrence Road, the officers set up surveillance. Eventually, Pedro, Sr. appeared. He told the officers that Steven was on his way "home."[4] While the officers waited, Detective Thomas Mulvey obtained a search warrant from the Lynn District Court. The affidavit submitted in support of the warrant relied heavily on Murphy's observation of the stolen motorcycle. During the subsequent search of 56 Lawrence Road, police seized the motorcycle and other evidence, including incriminating records stored on the hard drive of a Dell desktop computer. On August 20, 2009, Steven Soto was indicted by a federal Grand Jury for mail fraud, wire fraud, bank fraud, and aggravated identity theft (crimes for which he was ultimately convicted on December 20, 2010).

In an Order dated June 23, 2010, Judge Tauro suppressed the evidence seized during the search of the home and the desktop computer. Judge Tauro held that the

---

[4] It is unclear whether Pedro, Sr. was referring to the Soto family residence or to Steven Soto's Springfield address.

officers lacked a reasonable belief that Steven Soto lived at 56 Lawrence Road or would be present when they arrived with the arrest warrants.[5] The prosecution therefore could not rely on the arrest warrant for Steven Soto to justify Detective Murphy's trespass of the curtilage (the side yard) of the home. Because Murphy's illegal viewing of the stolen motorcycle was the only information Judge Tauro found to link Steven Soto's criminal activity to 56 Lawrence Road, once that information was excised from the affidavit, probable cause for issuance of the search warrant disappeared.[6] The government did not appeal Judge Tauro's Order.

On March 30, 2007, a year after the initial search of 56 Lawrence Road, Magistrate Judge Hillman issued a warrant for the search of the contents of a Gateway laptop computer seized from a Chrysler automobile impounded by the Saugus Police Department.[7] Trent Everett, an agent of the United States Secret Service, submitted

---

[5] Pedro, Jr. was not indicted as a codefendant in the case, and Judge Tauro's Order did not discuss the possible implications of the companion warrant issued for Pedro, Jr.'s arrest.

[6] Judge Tauro ruled that "[t]he remnants of the affidavit, together with whatever nonspeculative inferences might plausibly be drawn therefrom, are too meagre to warrant reasonably prudent persons believing that the articles sought . . . were likely located at the situs." June 23, 2010 Order at 5, quoting *United States v. Curzi*, 867 F.2d 36, 46 (1st Cir. 1989) (internal quotations removed). Judge Tauro also suppressed without comment the contents of the hard drive of the Dell desktop computer, presumably as the tainted fruit of the "poisoned" search.

[7] The government states that it does not intend to offer evidence of the seizure of the automobile itself. In their Supplemental Memorandum, defendants appear to be under the mistaken impression that Magistrate Judge Hillman's March 30, 2007 warrant authorized the seizure of the Chrysler, which it did not. The warrant was

the supporting affidavit. Everett, who had been a member of the Lawrence Road task force in 2006, alluded to Detective Murphy's espying of the stolen motorcycle through the garage window. The affidavit also related the seizure and subsequent search of the hard drive of the Dell desktop computer, as well as the evidence it contained implicating Steven Soto in bank fraud, identity fraud, and motor vehicle theft.[8]

The affidavit then described evidence gathered apart from and subsequent to the 2006 search of 56 Lawrence Road. On February 2, 2007, Agent Everett received a fraud alert from Eastern Bank informing him that Steven Soto had opened a checking account for a company called Aggressive Construction, identifying himself as its owner, "Gregory E. Bradley." Everett quickly established that the real Bradley was then incarcerated at the Essex County House of Correction. Later that day, Steven Soto was arrested by Saugus police at a branch of Eastern Bank where he was attempting to cash a fraudulent check for $5,700 made out to Bradley. Soto had presented the teller with a driver's license and an American Express card in Bradley's name. As Soto was being escorted out of the bank by police, he gestured to a Hispanic woman (later identified as Yessica Amaro), who then drove off in the Chrysler. A record search indicated that

---

directed to a search of the contents of the laptop found in the Chrysler after the car had been impounded. As will be seen, Saugus police had ample cause to seize and impound the vehicle.

[8] This is the extent of the material facts carried over from the 2006 affidavit to the 2007 affidavit (which was prepared by a different affiant).

the Chrysler had been purchased and registered in the name of "Gregory Bradley" in February of 2007.

According to the affidavit, Amaro later arrived at the Saugus police station in the Chrysler, accompanied by defendant Kimberly Litwin. Amaro attempted to retrieve a set of car keys from Steven Soto's impounded belongings. When officers confronted the women about the ownership of the Chrysler, they claimed that it had been purchased a few days earlier by Bradley (an impossibility given his incarceration). Police then impounded the Chrysler. An inventory of the contents disclosed the Gateway laptop.[9]

On May 16, 2007, Magistrate Judge Hillman issued search warrants for the Soto family residence at 56 Lawrence Road and for Kimberly Litwin's apartment at 14 Moulton Street.[10] The affidavit in support of the warrant was again prepared by Agent Everett. The affidavit essentially tracked the contents of the March 30, 2007 affidavit, while offering greater detail about what was learned from the search of the Dell desktop computer, including Steven Soto's (and Amaro's) involvement in motor

---

[9] The affidavit related evidence that Steven Soto had purchased the Chrysler using false identification documents for Bradley. He had also financed the purchase using Bradley's identity to obtain credit.

[10] A warrant was also issued for Paradise Real Estate, a business owned by Pedro, Sr. at 5 Broad Street in Lynn, although defendants dropped their challenge to this warrant in later briefs based on the government's stated intent regarding the evidence it plans to offer at trial.

vehicle-related identity fraud, using the names of Bradley and a "Christine Escribano."

Everett also related his subsequent unearthing of a scheme in which Steven Soto used

the forged signatures of Milagros Espinal, a notary, to fraudulently finance non-existent

car sales through a fictitious automobile dealership. The affidavit then recited the

events leading up to the search of the Gateway laptop. That search uncovered false pay

stubs and W-2 forms, records of fraudulent vehicle purchases, records of fraudulent

real estate purchases conducted by Steven and Pedro, Sr. in Bradley's name, rental

receipts for a storage unit where in April of 2007, Steven Soto had hidden a Dodge

Charger purchased in Bradley's name,[11] and a website advertising an illegal lottery

linked to 56 Lawrence Road and Paradise Real Estate, Pedro, Sr.'s real estate business.

The affidavit finally related incriminating telephone conversations placed by

Steven Soto while he was incarcerated at the Essex County House of Correction from

February through March of 2007.[12] At the time, the Essex County Sheriff's

Department had a written policy governing the recording and retention of inmate

---

[11] Everett stated that he had since interviewed Bradley, who told him that he had not authorized Steven Soto to use his name for any purpose.

[12] According to the affidavit, Steven Soto alluded to his criminal activity while speaking with his mother and father. Agent Everett noted that these confidences supported a finding of probable cause to believe that Steven Soto would have been comfortable storing records of his fraudulent undertakings in his parents' home. During a call made by Steven Soto to Litwin, she complained about "all of the mail that [she] was getting" regarding applications for credit cards in Bradley's name and stated, "I have a problem because I'm getting certified letters now. From the mortgage companies." Everett Aff. ¶¶ 26, 27.

telephone calls.  As set out in the Inmate Orientation Handbook (which was distributed to every new inmate), "[a]ll inmate calls are subject to telephone monitoring and recording, except pre-authorized numbers for an attorney."  Before a call is connected, both the inmate and the recipient heard the following message: "Hello, this is a call from, [caller], an inmate at the Essex County Sheriff's Department.  To accept charges, press [].  This call is subject to monitoring and recording."

DISCUSSION

***Standing***

In *Rakas v. Illinois*, 439 U.S. 128, 128 (1978), the Supreme Court overruled the "legitimately on the premises" standing theory of *Jones v. United States*.[13]  The Court rejected a Fourth Amendment challenge raised by passengers of a seized automobile who disclaimed any ownership interest in the car or its incriminating contents.  Justice Rehnquist, the author of the majority opinion, dismissed a dichotomous standing analysis as redundant.  He explained:

> having . . . reaffirmed the principle that the 'rights assured by the Fourth Amendment are personal rights, [which] . . . may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure,' . . . the question necessarily arises whether it serves any useful analytical purpose to consider this principle a matter of standing, distinct from the merits of a defendant's Fourth Amendment claim.

*Id*. at 138-139.  *See also Minnesota v. Carter*, 525 U.S. 83, 87-88 (1998).

---

[13] 362 U.S. 257 (1960).

In *United States v. Salvucci*, 448 U.S. 83 (1980), the Court turned to the second leg of *Jones*, finding that in light of *Simmons v. United States*,[14] which bars the substantive use at trial of a possessory claim advanced to establish standing, the "automatic" standing rule "had outlived its usefulness." *Id.* at 95. (In *Salvucci*, the defendants were indicted for the possession of stolen mail that had been hidden in the apartment of one defendant's mother; the trial court had "automatically" granted standing to all defendants). *See also United States v. Padilla*, 508 U.S. 77, 82 (1993) (per curiam) (rejecting the doctrine of coconspirator standing). In *Rawlings v. Kentucky*, 448 U.S. 98 (1980), the Court curtailed the standing doctrine further by refusing standing to Rawlings, who had thrust drugs into the purse of a female acquaintance as police closed in. Given the sudden and expedient nature of the transaction, the Court rejected Rawlings' argument of a bailment, and dismissed as unreasonable any "legitimate" expectation of privacy on Rawlings' part in the purse. The Justices discounted Rawlings' claim of ownership of the drugs as merely a "fact to be considered . . . . *Rakas* emphatically rejected the notion that 'arcane' concepts of property law ought to control the ability to claim the protections of the Fourth Amendment." *Id*. at 105.

Privacy analysis involves a two-part inquiry. First, did the defendant manifest

---

[14] 390 U.S. 377 (1968).

a subjective expectation of privacy in the premises or property that is the subject of the search? Second, is that expectation one that society is prepared to recognize as objectively reasonable? *See Rakas*, 439 U.S. at 143-144 n.12. *Cf. Commonwealth v. Royce*, 20 Mass. App. Ct. 221, 225 (1985) ("[A] legitimate expectation of privacy means more than a subjective expectation of keeping incriminating evidence hidden.") (citations omitted). As Justice Powell noted in his concurring opinion in *Rakas*, the reasonableness of an asserted interest in privacy is determined by the totality of the circumstances.

> Thus, the Court has examined whether a person . . . took normal precautions to maintain his privacy . . . . Similarly, the Court has looked to the way a person has used a location, to determine whether the Fourth Amendment should protect his expectations of privacy. . . . The Court on occasion also has looked to history to discern whether certain types of government intrusion were perceived to be objectionable by the Framers . . . . And, as the Court states today, property rights reflect society's explicit recognition of a person's authority to act as he wishes in certain areas . . . .

*Rakas*, 439 U.S. at 152-153. *See also United States v. Sanchez*, 943 F.2d 110, 113 (1st Cir. 1991). The defendant bears the burden of proving that he had both a subjective and objectively reasonable expectation of privacy. *United States v. Cruz Jiminez*, 894 F.2d 1, 5 (1st Cir. 1990). If a reasonable expectation of privacy does not exist, an "intrusion" by police is not a search in any constitutional sense.[15]

---

[15] The Supreme Court has emphasized repeatedly that the Fourth Amendment accords its highest protections to the home. "[P]hysical entry of the home is the chief

The government first argues that the Sotos cannot show that they had a reasonable expectation of privacy in Litwin's residence at 14 Moulton Street. Conversely, the government argues that Litwin cannot establish that she had a reasonable expectation of privacy in the Soto residence at 56 Lawrence Road. Defendants do not contend otherwise; however, they ask the court to apply the First Circuit's "holding" in *United States v. Scott,* 270 F.3d 30, 44-45 (1st Cir. 2001). They also ask the court to grant them "universal standing" because "the need for a deterrent here is high because of the risk that by violating a third party's rights, police officers could ultimately obtain evidence against a target which may not be suppressed based upon the current case law as it relates to standing." Defs.' Supp. Mem. at 9.

The difficulty with the argument is that while *Scott* contemplated the theoretical possibility of vicarious standing, it did so in the context of a discussion of the inevitable discovery doctrine. The First Circuit expressed a concern that the "application of the inevitable discovery exception to [the *Scott*] case would allow the government to benefit at least somewhat from the unconstitutional actions" of the police. *Scott*, 270 F.3d. at 44. In the end, however, the Court concluded that there was little (if any) contemporary authority supporting a grant of standing where a defendant's personal

---

evil against which the wording of the Fourth Amendment is directed." *Wilson v. Layne*, 526 U.S. 603, 610 (1999), quoting *United States v. United States Dist. Court for E. Dist. of Michigan*, 407 U.S. 297, 313 (1972).

rights are not implicated – especially in a case like *Scott* where the constitutional violation was neither particularly serious nor even apparent. (In *Scott*, police questioning of a suspect without giving *Miranda* warnings led to the defendant's arrest. Not unreasonably, the police believed that the suspect was not in custody when the questioning took place).

The ultimate holding in *Scott* is very different than the one that defendants portray. The defendant in *Scott* received no benefit from the Court's musings. Rather, the Court held that "a defendant cannot obtain the remedy of suppression by simply relying *solely* on an illegality . . . if the illegality did not violate the defendant's personal rights." *Id.* Here, the government does not rely on the inevitable discovery doctrine, nor does the validity of the 2007 search warrants depend solely – in fact, hardly at all – on the evidence seized in the 2006 search of 56 Lawrence Road. Although it referenced the 2006 search at 56 Lawrence Road, the 2007 affidavit submitted by Agent Everett focused on details of defendants' criminality compiled after the 2006 seizures of evidence.

Because they have no standing to challenge the search of Litwin's apartment at 14 Moulton Street, the Sotos' motion to suppress the fruits of that search will be denied. Conversely, because Litwin lacks standing to challenge the search of 56 Lawrence Road, her motion to suppress the evidence seized in that search will also be

denied.

The government next contends that defendants lack standing to challenge the search of the Gateway laptop found in the impounded Chrysler. The Saugus police, it will be recalled, seized the Chrysler after learning it had been acquired by Steven Soto using Bradley's identity. That probable cause existed to impound the Chrysler and that the inventory of its contents, including the laptop, was proper is not a matter of serious debate.[16]

It is a common-sense proposition that "a defendant who knowingly possesses a stolen car has no legitimate expectation of privacy in that car." *United States v. Tropiano*, 50 F.3d 157, 161 (2d Cir. 1995); *see also United States v. Lanford*, 838 F.2d 1351, 1353 (5th Cir. 1988); *United States v. Hensel*, 672 F.2d 578, 579 (6th Cir. 1982) (per curiam); *United States v. Hargrove*, 647 F.2d 411, 412 (4th Cir. 1981). *Cf. United States v. Johnson*, 584 F.3d 995, 1002 (10th Cir. 2009) (defendant had no reasonable expectation of privacy in a storage unit that he rented using another person's stolen identity). It is equally well established that the contents of a lawfully impounded vehicle may be inventoried without a warrant as part of a standardized administrative procedure. *See Colorado v. Bertine*, 479 U.S. 367 (1987); *South Dakota v.*

---

[16] Litwin's assertion that she has standing to challenge the seizure of the Chrysler because she was given a power of attorney by Bradley is puzzling and irrelevant as Bradley has no claim of an actual ownership interest in the vehicle.

*Opperman*, 428 U.S. 364 (1976).  If the impoundment is proper, evidence of criminal activity will not be suppressed even if officers have a contingent suspicion that the vehicle contains incriminating items.  *See United States v. Khoury*, 901 F.2d 948, 959 (11th Cir. 1990) ("[A] legitimate non-pretext inventory search is not made unlawful simply because the investigating officer remains vigilant for evidence during his inventory search.").  Finally, the Fourth Amendment permits officers following a standardized procedure to inventory the contents of closed containers, locked or unlocked, found in the storage compartments of the vehicle.  *See Bertine*, 479 U.S. at 372-373.

Assuming that the inventory policy of the Saugus police permitted the opening of closed containers (there is no evidence of the policy in the record, but most do), it is doubtful that such a policy would permit the "inventory" of the contents of a computer hard drive, effectively a secure container within a closed container.  *See United States v. Payton*, 573 F.3d 859, 861-862 (9th Cir. 2009) ("Searches of computers . . . often involve a degree of intrusiveness much greater in quantity, if not different in kind, from searches of other containers.").  *But see United States v. Caymen*, 404 F.3d 1196, 1200-1201 (9th Cir. 2005) (defendant could not claim standing to object to the search of a fraudulently obtained computer hard drive).

There is some authority supporting the proposition that a person may retain a

reasonable expectation of privacy in the contents of a closed or locked container that he leaves in a place in which he can claim no reasonable expectation of privacy.[17] *See, e.g., State v. Mooney*, 588 A.2d 145, 155-161 (Conn. 1991). In *Mooney*, the Connecticut Supreme Court concluded that a homeless man retained an expectation of privacy in the contents of a duffel bag and cardboard box he had stored beneath a bridge. The case turned on the fact that for want of an alternative, the defendant considered the bridge his home. *Id.* at 109-110. There is no evidence that Steven Soto had a similar subjective regard for the sanctity of the Chrysler – it appears to have been merely one of the many vehicles that he acquired by fraud and freely shared with his associates. *See United States v. Dall*, 608 F.2d 910, 915 (1st Cir. 1979) ("The already diminished expectation of privacy that attaches to motor vehicles is still further attenuated when the owner ha[s] given over possession to another for the other's own uses to the temporary exclusion of the owner."). Moreover, *Mooney* relied heavily on *Chadwick v. United States*, 433 U.S. 1 (1977), which required police to obtain a search warrant when probable cause focused on a closed container fortuitously seized in a vehicle, rather than on the vehicle itself. This rule was eventually rejected by the Court in *California v. Acevedo*, 500 U.S. 565, 579 (1991) ("We conclude that it is better to adopt one clear-cut rule to govern automobile searches and eliminate the warrant

_____

[17] The government does not contest Steven Soto's claim of ownership of the laptop.

15

requirement for closed containers . . . .").

Steven Soto's claim is more properly weighed in the context of the law of abandonment. Abandonment in a Fourth Amendment sense is not a function of property law.

> In the law of property, the question . . . is whether . . . the owner has voluntarily, intentionally, and unconditionally relinquished his interest in the property so that another, having acquired possession, may successfully assert a superior interest. . . . In the law of search and seizure, however, the question is whether the defendant has, in discarding the property, relinquished his reasonable expectation of privacy so that its seizure and search is reasonable within the limits of the Fourth Amendment. . . . In essence, what is abandoned is not necessarily the defendant's property, but his reasonable expectation of privacy therein.

*City of St. Paul v. Vaughn*, 237 N.W.2d 365, 370-371 (Minn. 1975) (footnote omitted).

Thus, "even an inadvertent leaving of effects in a public place, whether or not an abandonment in the true sense of that word, can amount to a loss of any justified expectation of privacy." Wayne R. LaFave, 1 *Search and Seizure* § 2.6(b) (4th ed. 2004). Whether a defendant has retained an objectively reasonable expectation of privacy in allegedly abandoned property is a matter of law for the court. *United States v. Austin*, 66 F.3d 1115, 1118 (10th Cir. 1995). Here, I have no difficulty concluding that by leaving his computer in a stolen car given over to the possession of a third party, Steven Soto forfeited any legitimate expectation of privacy that he may have had in its

hard drive.[18]  In sum, despite a legitimate claim of ownership, Steven Soto stands on no firmer ground than the petitioner in *Rawlings*, and his motion to suppress the contents of the hard drive will be denied for lack of standing.

### Summary

Where the defendants stand: The Sotos, collectively, have no standing to challenge the warrant to search Litwin's apartment at 14 Moulton Street.  Litwin, in turn, has no standing to challenge the search of 56 Lawrence Road.  Conversely, the Sotos collectively have standing to challenge the search of 56 Lawrence Road, and Litwin has standing to challenge the search of 14 Moulton Street.  No defendant has standing to challenge the seizure of the Chrysler or the laptop.  Steven Soto lacks standing to challenge the search of the hard disk of the impounded laptop.  All defendants have standing to challenge the interception and recording of the telephone calls made by Steven Soto from the Essex House of Correction.[19]

---

[18] Here, the officers took no chances and did what has been counseled by courts in the context of dwelling searches – they secured the laptop and obtained a warrant to search its hard drive.  *See, e.g., United States v. Place*, 462 U.S. 696, 701 (1983).

[19] Title III  of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2518(10)(a), confers statutory standing on any person whose electronic communications are intercepted by government officials with or without a warrant.

Turning to the substance of the motions, I will first dispose of the issue of the monitored telephone calls, and then turn to the warrants for 56 Lawrence Road and 14 Moulton Street.

### *Recordings of Steven Soto's Essex House of Correction Telephone Calls*

Defendants argue that the monitoring of Steven Soto's telephone calls during his incarceration at the Essex House of Correction violated Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (Title III), 18 U.S.C. § 2510.[20] The argument, however, is foreclosed in this Circuit by *United States v. Lewis*, 406 F.3d 11 (1st Cir. 2005). "[A] recording made pursuant to the routine prison practice of monitoring all outgoing inmate calls under a documented policy of which inmates are informed does not constitute an interception for Title III purposes." *Id.* at 19. Such was the case here, where all inmate calls were recorded pursuant to a written policy of the institution, which was communicated to each inmate in two ways: (1) through an Inmate Orientation Handbook, which stated, "All inmate calls are subject to telephone monitoring and recording, except pre-authorized numbers for an attorney"; and (2) by a pre-recorded warning message played before each call was connected. There is no basis on which the monitored calls could be suppressed.

---

[20] Title III prohibits the interception of electronic, wire, and oral communications without prior judicial authorization except under carefully delineated circumstances. *See United States v. Giordano*, 416 U.S. 505, 514 (1974).

*May 16, 2007 Search of 56 Lawrence Road*

**a. Connection to the Premises**

The Sotos first assert that the supporting affidavit failed to establish a nexus between Steven Soto's criminal activity and the Soto family residence at 56 Lawrence Road.[21] As a matter of first principle, police must establish probable cause to believe that the place to be searched is connected to the suspected criminal activity and is thus a likely repository of relevant evidence.[22] *See United States v. Hove,* 848 F.2d 137, 139-140 (9th Cir. 1988) (affidavit inadvertently omitted a crucial paragraph connecting defendant to the premises to be searched). Four aspects of Agent Everett's affidavit persuade me that it established a fair probability that evidence of Steven Soto's ongoing fraudulent activity would be found at 56 Lawrence Road. First, the affidavit's reference to conversations monitored between Steven Soto and his parents in which he made unguarded comments about his criminal conduct, as well as the fact that Pedro, Sr. was in some respects Steven's partner in crime, give rise to a compelling inference (as Agent Everett noted) that Steven Soto would have felt secure in storing incriminating records in the home. Second, the affidavit relates the fact that Pedro, Sr.

---

[21] Litwin makes the same assertion with respect to 14 Moulton Street.

[22] Probable cause "merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (plurality opinion) (internal citation omitted).

had offered the family home as the "first prize" in an illegal lottery, suggesting a further connection between 56 Lawrence Road and the Sotos' multi-faceted criminal enterprise. Third, the 2006 affidavit related the fact that the Lynn District Court had issued a warrant for Steven Soto using 56 Lawrence Road as his address.[23] And deserving of most weight, given the protracted conduct described in the affidavit involving multiple false records and identities, a magistrate could fairly infer that these were not only the types of records likely to be preserved, but also likely to be stored in a safe and easily accessible place, such as a home. *See United States v. Whitner*, 219 F.3d 289, 297-299 (3d Cir. 2000) ("After all, a dealer logically could conclude that his residence is the best, and probably the only, location to store items such as records of illicit activity . . . ."); *United States v. Feliz*, 182 F.3d 82, 87-88 (1st Cir. 1999) ("If he did not maintain his accounts and records [of his established ongoing drug operation], and the presumably large sums of money received in the course of his dealings, at his apartment, where else would he keep them?"); *Commonwealth v. Wilson*, 427 Mass. 336, 343 (1998) (items that are durable and of continuing utility are of the kind reasonably likely to be stored in a home).

As to 14 Moulton Street, nothing more need be recited than Litwin's complaints to Steven Soto in the monitored jailhouse calls about "all of the mail that I was getting"

---

[23] To be clear, Judge Tauro did not suppress the 2006 affidavit, only the fruits of the search.

in Bradley's name and that "I have a problem because I'm getting certified letters now. From the mortgage companies[,]" and Soto's response that "I put that address so everything goes to that address."  Everett Aff. ¶ 27.

### b.  Particularity of the Warrant and Affidavit

The Fourth Amendment requires that a warrant "particularly describe" the place to be searched and the persons or things to be seized.  *Groh v. Ramirez*, 540 U.S. 551, 557 (2004).  "[N]othing is left to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196 (1927).  In the 2007 residential warrants, Magistrate Judge Hillman authorized an "all records" seizure, limited, however, to evidence of "fraud and identity theft," and further limited to records in the names of specific persons and entities that had figured in the fraudulent scheme(s) limned in the affidavit incorporated by the warrant.  The fact of incorporation alone is sufficient to cure any deficiency with respect to the specificity of description.  *See Groh*, 540 U.S. at 557-558 ("[M]ost Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant."). *See also United States v. Bianco*, 998 F.2d 1112, 1116-1117 (2d Cir. 1993); *United States v. Klein*, 565 F.2d 183, 186 (1st Cir. 1977).  "Catch-all" clauses, like the one at issue here, which authorize the seizure of all "other fruits, instrumentalities and

evidence of crime at this (time) unknown," are acceptable if linked to specific criminal episodes described in the warrant. *See Andresen v. Maryland*, 427 U.S. 463, 479-482 (1976) (fraudulent transactions related to a particularly described parcel of land); *United States v. Pindell*, 336 F.3d 1049, 1053 (D.C. Cir. 2003) (evidence linked to a particular victim).

### c. Staleness

The affidavit must contain information sufficiently fresh to suppose that the items sought will still be on the premises when the warrant is executed. *Sgro v. United States*, 287 U.S. 206, 210-211 (1932). Whether or not information is stale depends on the nature of the property to be seized, the nature of the alleged crime, and the nature of the premises to be searched. *Andresen v. State*, 331 A.2d 78, 105 (Md. Ct. Spec. App. 1975), *aff'd sub nom. Andresen v. Maryland*, 427 U.S. 463 (1976). "The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock[.]" *Id*. at 106. Where, as here, an affidavit details continuing criminal conduct, time is less of the essence. "[With] a mere isolated violation . . . it is not unreasonable to believe that probable cause quickly dwindles with the passage of time. On the other hand, if an affidavit recites activity indicating protracted or continuous conduct, time is of less significance." *Commonwealth v. Vynorius*, 369 Mass. 17, 25 (1975) (internal quotations omitted).

*See United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985) (latest information was thirty-five days old in an affidavit that detailed a long-running and intensive investigation); *United States v. Dennis*, 625 F.2d 782, 792 (8th Cir. 1980) (three-month-old information regarding organized loan-sharking).

Defendants' assertion that the information in the affidavit was stale is difficult to parse given the nature of the Sotos' protracted conduct. The argument appears to confuse the virtue of inclusiveness with the sin of staleness. As the government points out, while the affidavit referenced conduct that dated back to the 2006 search, it included information about a continuing scheme gathered as recently as several weeks prior to the issuance of the warrants, including the incriminating conversations recorded during Steven Soto's incarceration at the Essex House of Correction. On balance, the information "presented enough circumstantial evidence from which a judicial officer reasonably could have inferred that documentary and physical evidence of the alleged ongoing conspiracy would be located in the [area named in the warrant]." *United States v. Bucuvalas*, 970 F.2d 937, 941 (1st Cir. 1992), *abrogated on other grounds by Cleveland v. United States*, 531 U.S. 12 (2000).

### d. Collateral Estoppel

Defendants next argue that Judge Tauro's suppression ruling in the earlier case has the effect of collaterally estopping the government from defending the motion to

suppress in this case. The doctrine of collateral estoppel prohibits relitigation of any factual or legal issue that was actually decided in a previous judicial proceeding involving the same parties. *See Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir. 1994). The fundamental flaw in defendants' collateral estoppel theory is that the government is not attempting to relitigate the 2006 search. Although the government disagreed with Judge Tauro's ruling, it did not take an appeal. Moreover, it has stipulated in this case that it will not offer any evidence seized in 2006 as part of its case-in-chief in the trial of this case.

### Motion for a Franks Hearing

To be entitled to a *Franks* hearing, a defendant must make a "substantial preliminary showing" that an affidavit contains intentionally false or recklessly untrue statements that are material to a finding of probable cause. *Franks*, 438 U.S. at 155-156, 170. "[T]he challenger's attack must be more than conclusory . . . . There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id.* at 171. A showing of negligence or good faith factual error is insufficient to trigger a *Franks* hearing. *See United States v. Monaco*, 700 F.2d 577, 580, 581 (10th Cir. 1983); *United States v. Baldwin*, 691 F.2d 718, 720 n.1 (5th Cir. 1982).

If a hearing is warranted, the defendant must prove the knowing falsity or recklessness of the affiant's statements by a preponderance of the evidence. *Franks*, 438 U.S. at 156. A reckless disregard of the truth is established by showing that the affiant had no reasonable grounds for believing a false statement, or if reasonably doubting its veracity, failed to take readily available steps to ascertain its truth; evidence seized during the search cannot be used after the fact to bolster the affiant's credibility. *United States v. Southard*, 700 F.2d 1, 10 n.5 (1st Cir. 1983). The defendant must also show that any deliberately false or reckless statement was material to the determination of probable cause. If such a showing is made, the offending statement is excised from the affidavit, which is then reexamined for probable cause. *Franks*, 438 U.S. at171-172; *United States v. Veillette*, 778 F.2d 899, 903-904 (1st Cir. 1985).

The basis under which defendants move for a *Franks* hearing rests on "two glaring misstatements" that they take from the original 2006 affidavit. Specifically, defendants object to the suggestion in the original affidavit that Detective Murphy was able to make out the VIN of the stolen motorcycle through the garage window. They also maintain that Murphy could not have seen the motorcycle he claims to have seen because the particular bike described in the affidavit had been sold to a third party prior to the search. *Id.* (A photograph of the motorcycle taken at the residence shows it to

have been a Honda, not a Suzuki as claimed in the Mulvey affidavit). For its part, the government explains that the source of the statement that Murphy saw a motorcycle through the garage window "bearing Massachusetts SZ6659 VIN # JS1GT75A532109394," is not Murphy, but Mulvey, who attributes the suggestion of supernatural vision on Murphy's part to his own bad writing. The second statement regarding the incorrect identification of the motorcycle resulted from defendants' switching of the original license plate with the license plate for another stolen motorcycle. Neither of these lapses seems terribly significant, but in any event, they are immaterial as neither appears in the 2007 affidavit, which was prepared by a different affiant.[24]

## ORDER

For the foregoing reasons, defendants' motion to suppress the search of the Gateway laptop hard drive is <u>DENIED</u> for lack of standing. Litwin's motion to suppress evidence seized from the May 16, 2007 search of 56 Lawrence Road is <u>DENIED</u> for lack of standing; the Sotos' motion is <u>DENIED</u> as a matter of substance. The Sotos' motion to suppress evidence seized from the May 16, 2007 search of 14 Moulton Street is <u>DENIED</u> for lack of standing; Litwin's motion is <u>DENIED</u> for lack

---

[24] This is not to suggest that a *Franks* issue can be avoided by simply switching affiants. The critical point is that apart from the boilerplate, the two affidavits are dissimilar in their factual recitations and their origins: the 2006 affidavit was prepared by a local officer for a state court; the 2007 affidavit was prepared by a federal agent for a federal Magistrate Judge.

of substance, as is her motion objecting to the seizure of the Chrysler automobile.  The

motion by all defendants to suppress the telephone conversations recorded during

Steven Soto's incarceration at the Essex House of Correction is <u>DENIED</u> for want of

substance.  Defendants' motion for a *Franks* hearing is  <u>DENIED</u> for the reasons

stated.  The Clerk will now set the case for trial.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE